UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REID BIGLAND,

                    Case No.: 19-11659

          Plaintiff,                  Hon. Gershwin A. Drain

v.

FCA NORTH AMERICA HOLDINGS,
LLC; *et al*.,

          Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a), AND, ALTERNATIVELY, TO DISMISS UNDER RULE 12(b)(6) [#18] AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [#17]

## I.      INTRODUCTION

Defendants removed the instant action from the Oakland County Circuit Court on June 5, 2019. Plaintiff Reid Bigland filed a First Amended Complaint on June 12, 2019, raising claims under the Whistleblowers' Protection Act, MICH. COMP. LAWS § 15.361 *et seq*., the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6, as well as a claim alleging violation of Michigan public policy and a claim for unjust enrichment.

Presently before the Court is the Defendants FCA North America Holdings, LLC's, FCA US LLC's and Fiat Chrysler Automobiles, N.V.'s Motion to Transfer

under 28 U.S.C. § 1404(a) and, Alternatively, to Dismiss under Rule 12(b)(6), filed on June 25, 2019. Plaintiff filed a Response in Opposition on July 17, 2019 and Defendants filed a Reply brief on July 31, 2019. Also, before the Court is the Plaintiff's Motion for Leave to File Second Amended Complaint, filed on June 24, 2019. Defendants filed a Response on July 8, 2019 and Plaintiff filed his Reply on July 15, 2019. A hearing on these matters was held on October 3, 2019.

For the reasons that follow, the Court will deny Defendants' Motion to Transfer and, Alternatively, to Dismiss under Rule 12(b)(6) and will deny without prejudice Plaintiff's Motion for Leave to File Second Amended Complaint.

## II.     FACTUAL BACKGROUND

Plaintiff has worked for what is now Defendant Fiat Chrysler Automotive, N.V. since 1997. ECF No. 10, PageID.73. Plaintiff has been promoted numerous times during his employment with Defendant and currently has the following positions at the company: Chairman, President, and CEO of Fiat Chrysler Canada; Head of US Sales; Head of US Fleet; and Global Head of Ram Brand. *Id*. at PageID.76. Plaintiff also sits on several corporate decision-making committees. *Id.* at PageID.77.

Due to litigation filed by a dealership owner and investors regarding Defendants' monthly sales reporting, Defendants' Internal Audit and Legal departments analyzed Defendants' monthly sales reporting practices and found no

wrongdoing. *Id.* at PageID.80. However, at the suggestion of counsel, Defendants self-reported their methodology for reporting monthly sales to the U.S. Securities and Exchange Commission ("SEC"). *Id.* In July of 2016, Defendant Fiat Chrysler Automobiles N.V. voluntarily changed its system for reporting monthly sales and restated its monthly sales numbers for the previous five years to reflect its new reporting methodology. *Id.*

Based on Defendants' self-report to the SEC, the SEC began an investigation into Defendants' former monthly sales reporting practices. *Id.* As part of the investigation, the SEC requested that Plaintiff meet with investigators. *Id.* at PageID. 81. Plaintiff testified under oath before the SEC that the monthly sales reporting practices at issue were in place long before Plaintiff became Head of U.S. Sales and that he followed these procedures. *Id.* at PageID.81. In late 2018, the SEC suggested that Plaintiff admit to some wrongdoing as to Defendants' monthly sales reporting. *Id.* The SEC also suggested a resolution involving some penalty to FCA. *Id.* Because Plaintiff did not engage in any wrongdoing, he declined to admit any wrongdoing. *Id.*

As of late 2018, Plaintiff believed that the SEC did not have an accurate understanding of Defendants' reporting methodologies. *Id.* at PageID.82. In order to ensure that the SEC had all relevant information, Plaintiff submitted a White Paper to the SEC in early 2019 which set forth the monthly sales reporting

methodology he inherited, his use of this protocol, Defendants' knowledge of the methodology and, lastly, Plaintiff summarized his testimony before the SEC. *Id.* Plaintiff provided Defendants a copy of the White Paper prior to submitting it to the SEC. *Id.*

Plaintiff asserts that his unwillingness to act as a scapegoat for Defendants' 30-year sales reporting methodology and candor regarding Defendants' knowledge of this practice prior to and during Plaintiff's tenure as head of U.S. Sales caused Defendants to retaliate against Plaintiff less than two months after submission of the White Paper. *Id.* at PageID.84. Specifically, Plaintiff maintains that Defendants have retaliated by withholding some of Plaintiff's compensation. *Id.* Plaintiff's compensation consists of three components: base pay; an annual bonus; and "Long Term Incentive" stock options. *Id.* at PageID.77. With no forewarning, on March 8, 2019, Global Human Resources Chief Linda Knoll advised Plaintiff that Defendants had decided to indefinitely defer his annual bonus for 2018 and payout of shares. *Id.* at PageID.84. While Defendants alluded to an internal investigation, Plaintiff has never been given a specific reason behind the Defendants' decision to withhold Plaintiff's compensation. *Id.* However, he was informed that Defendants were angry that he sold his shares in the company, and Defendants have admitted that his compensation was withheld, in part, because of this sale. *Id.* at PageID.85.

### III.   LAW & ANALYSIS

#### A. Motion to Transfer and/or Motion to Dismiss

##### 1.   Standard of Review

Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 27 (1960).  The district court has broad discretion to grant or deny a motion to transfer, so long as jurisdiction is proper in either court. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

There are several factors the district courts should consider when deciding whether or not to transfer under 28 U.S.C. § 1404(a).  *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1137 (6th Cir. 1991). The private interest factors include (1) convenience of the parties and witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. *Id.*  The public interest factors include (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, and (3) the relative familiarity of the two courts with the applicable law.  *Id.*  In the ordinary case, the party seeking

a § 1404(a) transfer must bear the burden of establishing the existing forum is inconvenient. *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp.2d 943, 946 (E.D. Mich. 2003).

However, when evaluating a § 1404(a) request for transfer premised on a valid, mandatory and enforceable forum selection clause, the § 1404(a) analysis changes. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013) ("The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis . . . ."). In this situation, the plaintiff's choice of forum is given no weight and the plaintiff "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* Additionally, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id*. Rather, the court is to evaluate public interest factors only. *Id.* Where the parties have agreed to a valid forum selection clause, the district court should ordinarily transfer the case to the forum specified in the clause because "[i]n all but the most unusual cases, [] the interest of justice is served by holding parties to their bargain." *Id*. at 66.

## 2. The Operative Agreements

Defendants move this Court to transfer this action to the U.S. District Court for the District of Delaware, or, alternatively, to dismiss the Amended Complaint

on the grounds that pursuant to a valid forum selection clause, Plaintiff and Defendants agreed that any dispute between Plaintiff and Defendants regarding the terms of Plaintiff's equity awards would be exclusively brought in federal or state court in Delaware.

Specifically, Defendants refer the Court to the Equity Incentive Plan (the "Plan"), which designates Delaware as the exclusive jurisdiction for any matter relating to the Plan:

> BY ACCEPTING ANY AWARD UNDER THE PLAN, THE PARTICIPANT EXPRESSLY AND IRREVOCABLY AGREES TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT LOCATED IN WILMINGTON, DELAWARE, UNITED STATES OF AMERICA IN RESPECT OF ANY MATTER RELATING TO THE PLAN THAT IS NOT OTHERWISE ARBITRATED OR RESOLVED IN ACCORDANCE WITH SECTION 21 HEREOF, INCLUDING, WITHOUT LIMITATION, ANY ACTION OR PROCEEDING TO COMPEL ARBITRATION OR TO ENFORCE AN ARBITRATION AWARD.

ECF No. 18-2, PageID.199.

Plaintiff counters that his Employment Agreement controls the parties' dispute over the appropriate forum in this case. The Employment Agreement, effective December 20, 2016, "is intended to provide payments and benefits to the executive as a member of the Group Executive Council." ECF No. 23-1, PageID.753. The Employment Agreement states in pertinent part:

**3. Compensation**

**A. Base Salary and Bonus.** The Company will pay the Executive a base salary as determined by the Company from time to time. The Executive will also be eligible for an annual cash bonus as determined for each year by the Company in its discretion and in accordance with the plans and arrangements that may be in effect from time to time.

\*   \*   \*

**B. Benefits.** During the period of employment and while the Executive serves on the GEC, except as otherwise expressly provided, the Executive will be entitled to participate in employee benefit and other plans, policies and programs and benefits on a basis consistent with those provided generally to other members of the GEC in the same country of employment.

*Id.* at PageID.753-54. The Employment Agreement further states that "[t]his agreement embodies the complete agreement and understanding among the parties and supersedes and preempts any prior understandings, agreements, or representations by or among the parties, written or oral, that may have related to the subject matter hereof in any way . . . ." *Id.* at PageID.760.

Plaintiff argues that the Employment Agreement's written integration clause is conclusive evidence that the parties intended it to be the final and complete expression of their agreement as to Plaintiff's compensation. Because the Employment Agreement integrated the Plan and does not contain a forum selection clause, Plaintiff maintains that the alternate analysis for § 1404(a) motions set forth in *Alt. Marine* is not warranted here.

Plaintiff's argument is not well taken. The Employment Agreement only governs Plaintiff's base salary and annual bonus. The Plan states that its purpose "is to set forth principles and rules, which govern the grant of stock-based awards" that "shall not be deemed a part of a Participant's compensation[.]" ECF No. 18-2, PageID.189, 199. Moreover, if the Plan was nullified by the Employment Agreement, Plaintiff could have no expectation or entitlement to the equity awards governed by the Plan.

### 3. Is the Forum Selection Clause Mandatory and Enforceable?

Plaintiff has not advanced any meritorious arguments suggesting that the forum selection clause is permissive or unenforceable. A forum selection clause may be unenforceable if: 1) it was obtained by fraud, duress, the abuse of economic power or other unconscionable means, 2) the designated forum would be closed to the suit or would not handle it effectively or fairly, or 3) the designated forum would be so seriously inconvenient forum that to require plaintiff to bring suit there would be unjust. *See Security Watch, Inc. v. Sentinenl Sys.*, 176 F.3d 369, 375 (6th Cir. 1999) (quoting Restat. 2d Conflict of Laws, § 80 (2nd 1998) (internal quotation marks omitted)). The forum-selection clause states that "[b]y accepting any award under the plan," each participant of the Plan "expressly and irrevocably agrees" to the exclusive jurisdiction in Delaware. ECF No. 18-2, PageID.199.

Plaintiff alleges that he accepted "stock payout[s]" in 2016, 2017 and 2018. ECF No. 10, PageID. 79. Thus, Plaintiff's claim that he did not sign the Plan is of no consequence. *Transp. Sys., LLC v. Pace Runners, Inc*., No. 18-11458, 2018 U.S. Dist. LEXIS 130262, *5 n.5 (E.D. Mich. Aug. 3, 2018) ("It is well-established in contracts law that when both parties perform under the contract, performance constitutes acceptance even if there is an irregularity with the signatures or other formal acceptance details."). Lastly, the forum-selection clause is "mandatory" because it "dictates an exclusive forum for litigation." *Quicken Loans Inc. v. RE/MAX, LLC*, 216 F. Supp.3d 828, 833 (E.D. Mich. 2016).

### 4. Does the Forum Selection Clause Govern All of Plaintiff's Claims?

The difficulty with respect to accepting Defendants' argument that a forum selection clause governs this matter is that the Plan only relates to "[s]tock-based awards to eligible top performers and key leaders of the Company . . . ." *Id.* at PageID.189 ("The purpose of the Plan is to set forth principles and rules, which govern the grant of *Stock-based awards* to eligible top performers and key leaders of the Company . . . .") (emphasis supplied). Plaintiff's claims concern Defendants' purported retaliatory withholding of two forms of his compensation: the bonus and stock award. The purported retaliatory withholding of Plaintiff's bonus is not governed by the Plan, and therefore any claims associated with Plaintiff's bonus would not fall within the Plan's forum selection clause.

Defendants argue that the Court should transfer all of Plaintiff's claims even though Plaintiff's annual bonus does not derive from the Plan. Defendants assert that Plaintiff does not differentiate between his alleged entitlement to stock payments and an annual bonus, rather both forms of compensation are lumped together in each of his four counts. Defendants further argue that Plaintiff's allegations are that Defendants withheld both forms of compensation for the same improper reason, thus adjudication of these claims will be based on the same witnesses and evidence.

Defendants rely on *Wilson v. 5 Choices, LLC*, 776 F. App'x 320 (6th Cir. Jun. 12, 2019), however this case is distinguishable from the facts present here. In *Wilson*, the plaintiffs sued various defendants alleging RICO conspiracy and fraud related to the sale of real property. *Id.* at 322. The contracts at issue all contained forum selection clauses requiring that suit be brought in Utah. *Id.* The plaintiffs argued that not all of their claims were subject to a forum selection clause because some of the defendants were not parties to the subject real property agreements containing the clause. *Id.* at 329.

The *Wilson* court determined that transfer of the entire action was nonetheless appropriate because "the alleged conduct of the non-[contracting defendants] is so closely related to the contractual relationships that the forum-selection clauses apply to all the [d]efendants." *Id.* The *Wilson* court reasoned that

the plaintiffs "should not be allowed to escape the enforceable forum-selection clauses they had with the privity defendants merely by instead suing those Defendants' non-privity affiliates to recover on the very contracts containing the forum-selection clause." *Id.* This is unlike the situation here where Plaintiff's bonus-based allegations do not seek to recover from the very contract (the Plan) containing the forum selection clause.

Defendants also rely on *Thomas-Williams v. MGM Grand Detroit LLC*, No. 08-11030, 2009 U.S. Dist. LEXIS 27699 (E.D. Mich. Mar. 31, 2009). In *Thomas-Williams*, the plaintiff conceded that her statutory claim stemmed from her Employment Agreement, which required a work environment that "includes zero tolerance for sexual harassment and discrimination." *Thomas-Williams,* 2009 U.S. Dist. LEXIS 27699, at *4. Thus, the Plaintiff's breach of contract claim based on her employer's failure to comply with its discrimination policies included the same operative facts as her federal statutory and state civil rights claims. *Thomas-Williams,* 2009 U.S. Dist. LEXIS 27699, at *11-12. This factual scenario is different than what is present here because that case did not involve two separate agreements, one with a forum selection clause governing part of the plaintiff's claims and another agreement without such a clause governing the remaining portion of the plaintiff's claims.

Additionally, Defendants cite to *Ricketts v. Hybris, AG,* No. 1:15-CV-277, 2015 WL 13679481 (N.D. Ohio Jun. 19, 2015), where the plaintiff filed fraudulent inducement and conspiracy to commit fraud claims based on his employer terminating his employment prior to his stock options becoming vested. The *Ricketts* plaintiff's stock options arose from a Stock Option Plan which contained a forum selection clause requiring that disputes concerning the plan be brought in Switzerland. *Ricketts*, 2015 WL 13679481, at *1. However, these facts are not on point with the instant matter because the *Ricketts* plaintiff's claims solely concerned stock options which were governed by an agreement containing a forum selection clause.

Nor is *Rader v. Calloway Laboratories, Inc.*, No. 15-48-ART, 2015 WL 13675381 (E.D. Ky. Aug. 3, 2015) factually on point because that case involved a sole non-compete agreement containing a forum-selection clause. 2015 WL 13675381, at *1. Additionally, because an action had already been filed in Massachusetts, where the forum selection clause required suit be brought, the *Rader* court determined that transfer of plaintiff's claims that were not subject to the forum selection clause was appropriate because the two actions involved the same parties and issues, and when that occurs, "the court in which the first suit was filed should generally proceed to judgment." 2015 WL 13675381, at *1.

Conversely, Plaintiff's claims stem from two separate agreements, one with a forum selection clause and one without. Defendants also cite to decisions from circuits other than the Sixth Circuit, however none are factually on point with the present matter because they do not have multiple claims governed by two agreements, one with a forum selection clause and one without. *See Hisey v. Qualtek*, 753 F. App'x 698, 704 (11th Cir. Oct. 9, 2018) (affirming dismissal of retaliation claims based on Employment Agreement's forum selection clause requiring suit be brought in Pennsylvania); *Claudio-de Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41 (1st Cir. 2014) (same); *Fagbeyiro v. Schmitt-Sussman Enters., Inc.*, No. 17-CV-7056, 2018 U.S. Dist. LEXIS 168162 (S.D.N.Y. Sep. 28, 2018) (same).

Plaintiff counters that even if this Court determines the forum selection clause is valid and enforceable, it is nonetheless irrelevant because this case involves allegations of retaliation, rather than a breach of the parties' agreement. Defendants fail to point to any contractual language from the stock agreements that requires interpretation in order for Plaintiff to maintain his claims, which will require him to prove that he engaged in protected activity, experienced an adverse result as a consequence of that protected activity and suffered damages as a result. Where the dispute does not "arise directly" from the four corners of a contract containing a forum selection clause and the parties "could not have foreseen being

bound by its forum selection clause," it will not bind the parties. *Gen. Envtl. Sci. Corp. v. Horsfall*, 753 F. Supp. 664, 668 (N.D. Ohio 1990) *aff'd in par, rev'd in part on other grounds, Gen. Envtl. Sci. Corp. v. Horsfall*, 1994 WL 228256 (6th Cir. May 25, 1994) (forum selection clause inapplicable because dispute arose out of plaintiff's ongoing business relationship with the defendants, not the contract containing the clause). Plaintiff argues that the relief available to him for the retaliatory withholding of his compensation lays not in the law governing breach of contract, but in the statutory framework for whistleblower protection and other laws designed to shield employees from unlawful retaliation.

Contrary to Plaintiff's argument, his claims seeking recovery of stock options and dividends relate directly to the Plan. Plaintiff seeks relief for the improper withholding of stock payouts. Thus, this aspect of Plaintiff's claims falls within the parameters of "any matter relating [to] the Plan[.]" This language is "broad," and the Sixth Circuit "interpret[s] forum selection clauses with 'related to' language as covering" claims of all stripes, from "tort" claims to "consumer protection claims." *Com-Serv, LLC v. ICE Indus., Inc*., No. 3:18-CV-00123-GNS, 2018 WL 3543489, *5 (W.D. Ky. Jul. 23, 2018).

Yet, the remaining aspect of Plaintiff's claims—the unlawful withholding of Plaintiff's annual bonus— does not relate to the Plan. Thus, this aspect of his claims is not governed by the forum selection clause in the Plan. This difference

makes this case fall outside of the parameters of the "usual case" where the interests of justice support enforcement of a forum selection clause. *Atl. Marine*, 571 U.S. at 66. The standard enunciated in *Atlantic Marine* "depend[s] crucially on the assumption that a valid forum selection clause will cover each individual claim." *Lawson v. Global Payments, Inc.*, No. 18-cv-03360, 2019 U.S. Dist. LEXIS 157656 (D. Col. Sep. 16, 2019) (quoting *Eastcott v. McGraw-Hill Global Educ. Holdings, LLC*, No. 16-904, 2016 U.S. Dist. LEXIS 95708 (E.D. Pa. Jul. 22, 2016)). Without such an assumption, and like the circumstances present here, "there may be a presumption for transfer as to some parties or claims, but a presumption against transfer as to others." *Id.* (quoting Stephen E. Sachs, *Five Questions After Atlantic Marine*, 66 Hastings L.J. 761, 772 (2015).

When faced with this situation, district courts have either severed the case into separate actions, "or they have weighed the fact that certain claims are not subject to transfer among the other public interest factors to determine whether transfer would be appropriate for the action as a whole." *Id.* (citing Sachs at 772-73). Here, severance of Plaintiff's claims is not feasible. Forcing Plaintiff to litigate his claims in two separate courts when the claims stem from the same operative facts would result in an inefficient use of judicial resources. *See Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)("We have made quite clear that to permit a situation in which two cases involving precisely the same issues are

simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.")(internal quotation marks omitted); *see also Bronstein v. United States Customs & Border Prot.,* No. 15-cv-02399-JST, 2016 U.S. Dist. LEXIS 28998, *15 (N.D. Cal. Mar. 7, 2016) (recognizing that transferring tort-based claims so that they would be tried separately from the plaintiff's substantively similar claims against a different defendant would be "needlessly inconvenient and burdensome [and] plainly contrary to the policy of the federal judiciary of promoting the consistent and complete adjudication of disputes.").

Moreover, the public interest factors do not support transfer. Delaware has absolutely no connection to the instant dispute. Defendant FCA N.V. is a foreign corporation organized under the laws of the Netherlands and has a principal place of business in London, United Kingdom. Defendant FCA North America, LLC's sole member is Defendant FCA N.V., thus FCA North America is likewise a citizen of the Netherlands and the United Kingdom. Defendant FCA US is also a limited liability company. FCA US's sole member is FCA North America. Therefore, Defendant FCA US is also a citizen of the Netherlands and the United Kingdom. Conversely, Plaintiff is a citizen of Michigan, the place where the pertinent agreements were executed and performed, as well as where the alleged retaliatory conduct occurred. As such, Michigan has an interest in this matter

based on Plaintiff's citizenship and as the location of the operative facts giving rise to the instant dispute. Neither party has offered any argument concerning the congestion of this Court versus a federal or state court in Delaware. In any event, this Court's docket is not congested such that delay of this matter will occur.

Because Michigan has a strong interest in the adjudication of this matter, and Delaware has no connection to the parties or dispute, as well as the inefficiency of severing half of Plaintiff's claims that arise from the same operative facts as the claims that will remain, this is not the "usual case" under *Atlantic Marine*. Therefore, Plaintiff has met his burden demonstrating that transfer of this matter is unwarranted. *See Lawson*, 2019 U.S. Dist. LEXIS 157656, at *18 (noting that even if the court identified by the forum selection clause is more familiar with the law governing the plaintiff's claims, this is "not strong enough. . . to override the interest in judicial economy, which weighs heavily against transferring half of plaintiff's claims to a forum with a tenuous connection to the parties' dispute."); *see also Eastcott*, 2016 U.S. Dist. LEXIS 95708, at *11 (declining to transfer where the forum selection clause did not govern all of the plaintiff's claims, thus "judicial economy heavily favors litigating all claims together[,]" and alleged copyright infringement occurred in the district creating "a local stake in the outcome of th[e] dispute."); *Jes Solar Co., Ltd. v. Matinee Energy, Inc.*, No. CV 12-626 TUC DCB, 2014 U.S. Dist. LEXIS 87995, *7-8 (D. Ariz. Jun. 25, 2014)

(denying request to enforce forum selection clause because it would require the plaintiff to proceed "piecemeal" which contravenes "the interests of justice and would not be judicially economical."); *Artech Info. Sys., LLC v. ProTek Consulting*, No. PX-17-3468, 2018 U.S. LEXIS 124127, *11 (D. Md. Jul. 25, 2018) (declining to enforce forum selection clause where agreement did not apply to all of the defendants and severance of claims would "needlessly fracture this litigation and transform an otherwise fairly routine, localized business dispute into multidistrict litigation spanning the continental United States.").

Defendants' reliance on *Pence v. GEE Grp., Inc*., 236 F. Supp.3d 843, 853-54 (S.D.N.Y. 2017), is distinguishable because in that case there was a sole indemnity agreement containing a forum selection clause. *Id*. While only some of the claims arose from the indemnity agreement containing the forum selection clause, the *Pence* court found that transfer of the entire case was appropriate because the plaintiff failed to articulate any public interest factors and only argued that transfer of the entire case would "create inconvenience to" him. *Id*. Similarly, Defendants reliance on *Family Wireless #1 LLC v. Automotive Technologies, Inc*., is misplaced because that case involved forty-one plaintiffs who all brought identical claims. No. 15-11215, 2015 WL 5142350, *1 (E.D. Mich. Sep. 1, 2015). Even though some of the plaintiffs were not bound by a franchise agreement containing a forum selection clause requiring that suit be brought in Connecticut,

the *Family Wireless* court transferred all of the plaintiffs' claims to Connecticut because "the vast majority of Plaintiffs have no connection to this state[,]" and the defendant was headquartered and had its principal place of business in Connecticut. 2015 WL 5142350, at *7. Here, Defendant has no connection to Delaware, and Michigan is where the allegedly retaliatory conduct occurred, as well as is where the operative agreements were drafted and executed.

For all of these reasons, the Court will deny Defendants' Motion to Transfer, and, Alternatively, to Dismiss under Rule 12(b)(6).

### B. Motion for Leave to File Second Amended Complaint

In Plaintiff's present motion, he seeks leave to add an additional claim alleging violation of the Sarbanes-Oxley Act of 2002. Conversely, Defendants assert the Plaintiff's claim fails as a matter of law under the Sarbanes-Oxley Act.

Federal Rule of Civil Procedure 15(a) provides that a party may file an amended complaint "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Rule 15(a) provides that such "leave shall be freely given when justice so requires." *Id.* Rule 15 "reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

The United States Court of Appeals for the Sixth Circuit has identified various factors that this Court must consider when determining whether to grant leave to amend:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (citing *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). "[W]hen there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny the motion." *U.S. v. Marsten Apartments, Inc.*, 175 F.R.D. 257, 260 (E.D. Mich. 1997).

This Court concludes that the proposed amendment in the instant case would be futile at this juncture. A "proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). In the present case, Plaintiff's proposed pleading demonstrates this Court lacks jurisdiction over his Sarbanes-Oxley claim at this stage of the proceedings. The Sarbanes-Oxley Act provides:

(1) In general. A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by–
(A) filing a complaint with the Secretary of Labor; or
(B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

18 U.S.C. § 1514A(b).

To pursue a Sarbanes-Oxley retaliation claim in federal court, a plaintiff must follow the prerequisite administrative procedures. *Id.* Federal courts lack subject matter jurisdiction over Sarbanes-Oxley retaliation claims until a plaintiff files a complaint with "Occupational Safety and Health Administration ("OSHA") and afford[s] OSHA the opportunity to resolve the allegations administratively." *Verble v. Morgan Stanley Smith Barney*, LLC, 148 F. Supp. 3d 644 (E.D. Tenn. 2015) (quoting *Hanna v. WCI Cmtys., Inc.*, 348 F. Supp. 2d 1332, 1336 (S.D. Fla. 2004)) (internal quotation marks and citations omitted); *see*, e.g., *Radu v. Lear Corp.*, No. 04-40317, 2005 U.S. Dist. LEXIS 49769, 2005 WL 2417625, at *2 (E.D. Mich. Sept. 30, 2005) (dismissing Sarbanes-Oxley claim because Plaintiff failed to exhaust his administrative remedies by filing a complaint with OSHA); *Mart v. Forest River, Inc.*, 854 F. Supp. 2. 577, 608 (N.D. Ind. 2012) (same); *Delmore v. McGraw-Hill Cos.*, Inc., No. 12-CV-1306, 2013 U.S. Dist. LEXIS 97608 (dismissing Sarbanes-Oxley claim because failing to exhaust administrative

remedies "deprives the district court of jurisdiction to hear that plaintiff's [Sarbanes-Oxley] claim").

Here, Plaintiff's proposed claim states in relevant part that: "Plaintiffs filed a complaint with Occupational Safety and Health (OSHA), the Department of Labor's designated recipient for SOX grievances, on June 13, 2019." ECF No. 17-1, PageID.138. The administrative process gives OSHA 180 days to render a final decision on claims filed before relinquishing jurisdiction to the district courts. Plaintiff has failed to allow adequate time for the administrative process to complete prior to seeking relief through this Court. Therefore, because the proposed amendment is futile, the Court will deny Plaintiff leave to amend the Complaint without prejudice.

## V. CONCLUSION

Accordingly, for the reasons articulated above, Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a), and, alternatively, to Dismiss under Rule 12(b)(6)[#18] is DENIED.

Plaintiff's Motion for Leave to File Second Amended Complaint [#17] is DENIED WITHOUT PREJUDICE.

Defendants shall file an Answer to Plaintiff's First Amended Complaint within twenty-one days from the date of this Opinion and Order.

SO ORDERED.

Dated:  October 7, 2019                      /s/Gershwin A. Drain
                                                   GERSHWIN A. DRAIN
                                                   United States District Judge

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 7, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager